1   SKT LAW, P.C.
    Eliot F. Krieger, Esq. (SBN 159647) ekrieger@skt.law
2   Heidi S. Lewis, Esq. (SBN 98046) hlewis@skt.law
    7755 Center Avenue, Suite 1225
3   Huntington Beach, CA 92647
    (949) 523-3333 Telephone | (949) 523-3003 Facsimile
4

5   Attorneys for Plaintiffs FENIX PARTNERS GROUP, LLC, a Texas Limited
    Liability Company, and SPERIWORKS, LLC, a Texas Limited Liability Company
6

7

8                 UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  FENIX PARTNERS GROUP, LLC,        )   CASE NO. **5:22-cv-2653**
    a Texas Limited Liability Company, )
12  and SPERIWORKS, LLC, a Texas      )   COMPLAINT FOR:
    Limited Liability Company          )
13                                     )   1.  Fraud (Intentional
                 Plaintiffs,           )       Misrepresentation-Fenix)
14                                     )   2.  Fraud (Intentional
                                       )       Misrepresentation-
15  vs                                 )       SperiWorks)
                                       )   3.  Conspiracy to Defraud
16  SLAP GEAR PROTECTIVE, LLC,         )   4.  Aiding and Abetting
    a California Limited Liability     )       Conversion
17  Company; T&T GLOBAL               )   5.  Civil Theft (Penal Code
    LOGISTICS SERVICES AND             )       §496(a))
18  TRADING JOINT STOCK               )   6.  Intentional Interference with
    COMPANY, a Vietnamese              )       Fenix's Contractual Relations
19  Company; ELIZABETH TRUONG,         )   7.  Intentional Interference with
    an individual; and DOES 1-20,      )       SperiWorks' Contractual
20  inclusive                          )       Relations.
                                       )   8.  Intentional Interference with
21               Defendants.           )       SperiWorks' Prospective
                                       )       Economic Relations
22  _____      )   9.  Negligent Interference with
                                       )       SperiWorks' Prospective
23                                         Economic Relations
                                          10. Breach of Written Contract-
24                                            MSA
                                          11. Breach of The Covenant of
25                                            Good Faith and Fair Dealing
                                          12. Unjust Enrichment
26                                        13. Unfair Business Practices
                                             (Calif. Bus. & Prof. Code §
27                                            17200)

28                                        **DEMAND FOR JURY TRIAL**

SKT LAW, P.C.
7755 CENTER AVENUE, SUITE 1225
HUNTINGTON BEACH, CALIFORNIA 92647
T: (949) 523-3333; F: (949) 523-3003

SKT Law, P.C.
7755 Center Avenue, Suite 1225
Huntington Beach, California 92647
T: (949) 523-3333; F: (949) 523-3003

Plaintiffs Fenix Partners Group, LLC and SperiWorks, LLC ("Plaintiffs") allege as follows:

I

**Introduction**

1.  This case involves Defendants Slap Gear Protective, LLC ("Slap Gear"), Elizabeth Truong ("Truong") and T&T Global Logistics Services and Trading Joint Stock Company ("T&T")'s use of a Personal Protective Equipment ("PPE") scheme to defraud Plaintiffs Fenix Partners Group, LLC ("Fenix") and SperiWorks, LLC ("SperiWorks") causing them significant damages.

2.  The COVID 19 pandemic caused a worldwide demand and shortage of PPE in 2020. Nitrile gloves are a commonly used type of PPE made of synthetic rubber that is latex-free.  Nitrile gloves are often used in healthcare settings due to their superior durability, strength, and resistance to chemicals, and are a popular choice for people with a latex allergy or sensitive skin.

3.  In or about December of 2020, there existed a scarcity of Nitrile gloves in the United States due to the high demand for the gloves in the fight against the COVID 19 pandemic.

4.  At this time, Defendant Slap Gear represented on its website that it was, "…one of the largest distributors of FDA-approved Nitrile gloves and medical protective gear in California."

5.  Plaintiff Fenix was in the market for Nitrile gloves for its big customer Plaintiff SperiWorks. Starting in or about October 2020, Plaintiff Fenix contacted Defendant Slap Gear, through its officer/principal Defendant Truong, based on Slap Gear's website representation that it was "one of the largest distributors of FDA-approved Nitrile gloves." In this initial communication, Fenix told Slap Gear that it needed to purchase several million boxes of gloves per month and have delivered, within a short period of time, 660,000 boxes of Nitrile gloves

2

SKT LAW, P.C.
7755 CENTER AVENUE, SUITE 1225
HUNTINGTON BEACH, CALIFORNIA 92647
T: (949) 523-3333; F: (949) 523-3003

for a big customer, this initial order being a trial run for significantly larger orders to come.

6.    In response, Slap Gear represented through Truong to Fenix that it had a Vietnamese manufacturing source, T&T, that had the capability to manufacture and deliver FOB Vietnam well in excess of 660,000 boxes of the FDA approved Nitrile gloves within a short period of time. Slap Gear maintained, that as the exclusive distributor for T&T, it had the expertise, relationships, and personnel in Vietnam to oversee and successfully execute any transaction with T&T.

7.    Fenix informed Slap Gear that it would be purchasing the Nitrile gloves from T&T to wholesale to its big customer, who then intended to sell (retail) the product to its customers, including, but not limited to, the United States Department of Veterans Affairs, State of Texas, and State of Arkansas ("SperiWorks Customers"). Fenix stressed in its communications with Slap Gear that it was very important that T&T be a legitimate source for the gloves and have the capability to meet the 660,000-box demand within this short time frame as well as be able to source at least 2 million boxes per month thereafter. While Stuart Imel of Fenix did not identify SperiWorks in its conversations with Truong because of competition concerns, he did tell Truong that Fenix was brokering the purchase for its big customer for which he would receive a commission. He told Truong that his customer would be providing the funds for the purchase provided it received, through Fenix, the necessary assurances from Truong, Slap Gear and T&T that T&T was a legitimate source that could meet their time constraints and the 660,000 -box demand. In response, Truong bragged she had previously arranged delivery of 6 million boxes of gloves a month on multiple occasions and that T&T had the ability to meet Fenix's demand, especially a much larger, monthly allocation after this initial trial order of 660,000 boxes. Fenix repeatedly emphasized to Slap Gear that "time was of the essence" for the manufacture and

SKT LAW, P.C.
7755 CENTER AVENUE, SUITE 1225
HUNTINGTON BEACH, CALIFORNIA 92647
T: (949) 523-3333; F: (949) 523-3003

1  delivery by T&T of the 660,000 boxes of Nitrile gloves because they were
2  immediately needed by its customer's customers, including, but not limited to, the
3  United States Department of Veterans Affairs, State of Texas, and State of
4  Arkansas, in the fight against the ongoing COVID 19 pandemic. In response,
5  Truong, on behalf of Slap Gear and the sole distributor of T&T, repeatedly assured
6  Fenix that Slap Gear would facilitate and ensure the timely manufacture and
7  delivery FOB Vietnam by T&T of the 660,000 boxes of Nitrile gloves. Truong
8  provided Mr. Imel with a T&T brochure and an Authorized Distributor Certificate
9  which Fenix shared with SperiWorks, together with the assurances and
10  representations made by Truong on behalf of Slap Gear and T&T as alleged in
11  paragraphs 5 through 7 herein.

12      8.  Based on Slap Gear's represented position as the exclusive distributor
13  for T&T and her assurances regarding T&T capabilities, both Fenix and
14  SperiWorks understood Slap Gear to be an authorized agent of T&T for the sale of
15  Nitrile gloves and decided to purchase the gloves from T&T through its sole
16  distributor Slap Gear.

17      9.  In further reliance on Slap Gear's representations and its role as the
18  sole distributor for T&T, Fenix entered into a Master's Services Agreement with
19  Defendant Slap Gear on December 18, 2020 ("the MSA") whereby Slap Gear
20  promised it would, upon receipt of $200,000 from Fenix, negotiate with T&T the
21  purchase, transport, and delivery of 660,000 boxes of KYO brand Nitrile gloves
22  from the T&T factory in Vietnam Free on Board ("FOB") Vietnam and facilitate
23  the timely delivery of the ordered product. Fenix paid the $200,000 to Slap Gear as
24  required by the MSA from funds provided to it by SperiWorks.

25      10.  Two days later, Truong assisted Fenix with negotiating the Sale and
26  Purchase Agreement ("SPA") between Fenix and T&T. The SPA required T&T to
27  transport and deliver 660,000 boxes (66,000 cartons) of KYO brand Nitrile gloves
28

from Vietnam in four deliveries, as stated in Appendix 01 of the SPA and the Shipment Schedule, specifically:

| Delivery 01 | February 4, 2021 | 165,000 boxes |
| Delivery 02 | February 22, 2021 | 165,000 boxes |
| Delivery 03 | March 5, 2021 | 165,000 boxes |
| Delivery 04 | March 12, 2021 | 165,000 boxes |

11.    In reliance on Slap Gear's representations and its purported role as the sole distributor for T&T, SperiWorks provided Fenix the funds to pay T&T the initial deposit stated in the SPA of $2,871,000.00. SperiWorks then, in reliance on the transaction between Fenix and T&T, entered into the purchase and sale contracts with the SperiWorks' Customers for the Nitrile gloves promised by T&T.

12.    In early February 2021, approximately 30-days after signing the MSA and SPA, Slap Gear and T&T's fraud began to come to light. T&T informed the parties it would be unable to deliver the gloves as promised. Instead of delivering the required 165,000 boxes on February 4, 2021, T&T delivered *only 34,910 boxes*.

13.    After Slap Gear and T&T began missing delivery deadlines, Fenix and SperiWorks confronted Slap Gear and T&T demanding answers.  In response, Slap Gear and T&T, through Defendant Elizabeth Truong, assured them that Slap Gear and T&T could salvage the deal. Yet, to date, of the 660,000 boxes T&T was required to deliver between February 4, 2021, and March 12, 2021, it has delivered only 161,200 boxes (less than 25%) over ten months.

14.    As a result, Fenix was unable to meet its contractual obligation to SperiWorks for which it was to receive a commission and SperiWorks was unable to meet its contractual obligations to the SperiWorks Customers thereby losing significant profits.

///

SKT LAW, P.C.
7755 CENTER AVENUE, SUITE 1225
HUNTINGTON BEACH, CALIFORNIA 92647
T: (949) 523-3333; F: (949) 523-3003

15.     Both Fenix and SperiWorks have incurred millions of dollars in damages as a result of Slap Gear, Elizabeth Truong and T&T's tortious acts.[1]

## II

## **The Parties**

16.     Plaintiff Fenix Partners Group, LLC ("Fenix") is a Texas limited liability company, with its principal place of business in Texas.

17.     Plaintiff SperiWorks, LLC ("SperiWorks") is a Texas limited liability company, with its principal place of business in Texas.

18.     Defendant Slap Gear Protective, LLC ("Slap Gear") is a California limited liability company, with its principal place of business in San Jose, California.

19.     Defendant Elizabeth Truong ("Truong") is and at all times alleged herein was a resident of the County of Santa Clara, California.

20.     Defendant T&T Global Logistics Services and Trading Joint Stock Company ("T&T") is a company organized and operating in the country of Vietnam. T&T at all times had the requisite minimum contacts with the state of California, wherein its products were sold, by and through its sole distributor Slap Gear.

21.     On information and belief, non-party BluBio, LLC is a California limited liability company.

22.     Plaintiffs are ignorant of the true names and capacities of the defendants designated in this complaint as DOES 1 through 20, inclusive, and

---

[1] Despite repeated demands, T&T refuses to return over $1 million from the initial deposit, despite not delivering the 660,000 boxes called for by the SPA. Article 8 of the SPA between T&T and Fenix contains an arbitration clause for "all disputes, if any, arising in connection with" the SPA "or the execution thereof." Fenix has initiated an arbitration proceeding in the Singapore International Arbitration Centre against T&T for its damages arising from the SPA. Fenix does not allege any causes of action against T&T in this action.

SKT LAW, P.C.
7755 CENTER AVENUE, SUITE 1225
HUNTINGTON BEACH, CALIFORNIA 92647
T: (949) 523-3333; F: (949) 523-3003

COMPLAINT AND DEMAND FOR JURY TRIAL

therefore sues such defendants by such fictitious names.  Plaintiffs will amend this complaint when the true names and capacities of defendants sued as DOES 1 through 20 have been ascertained and is informed and believes that each of such DOE defendants is in some manner, means or degree responsible and liable for the acts and omissions alleged herein.

### III

### Federal Subject Matter Jurisdiction

23.     This court has original jurisdiction under 28 USC § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

### IV

### Venue

24.     Venue is proper in the Northern District (San Jose, CA) because Defendant Slap Gear's principal place of business is in San Jose, California and Defendant Truong resides in San Jose, California.  Further, the Master Services Agreement between Plaintiff Fenix and Defendant Slap Gear has a jurisdiction and venue clause stating: "All disputes under this Agreement shall be adjudicated in, and the sole and exclusive venue shall be, the courts located in Santa Clara County, California. Each party hereby consents to the jurisdiction of such courts."

### V

### General Allegations

### I.     Material Misrepresentations by Slap Gear and Truong

25.     In or about December 2020, Fenix was in the market for Nitrile gloves for its customer, SperiWorks.

///
///
///
///

SKT LAW, P.C.
7755 CENTER AVENUE, SUITE 1225
HUNTINGTON BEACH, CALIFORNIA  92647
T: (949) 523-3333; F: (949) 523-3003

7

SKT LAW, P.C.
7755 CENTER AVENUE, SUITE 1225
HUNTINGTON BEACH, CALIFORNIA 92647
T: (949) 523-3333; F: (949) 523-3003

26.     Fenix contacted Slap Gear, through its officer/principal Defendant Truong, based on Slap Gear's representation on its website that it was "one of the largest distributors of FDA-approved Nitrile gloves:"

## Our Story

Slap Gear is one of the largest distributors of FDA-approved nitrile gloves and medical protective gear in California. In an era of unprecedented healthcare, it's our philosophy to offer the finest safety

27.     In this initial communication, Fenix, through its principal Stuart Imel told Truong as the principal of Slap Gear that it needed to purchase and have delivered to its big customer, within a short period of time, 660,000 boxes of FDA-approved Nitrile gloves.  This transaction would serve as a trial run for significantly larger orders to come. The idea was that once this contract was successfully executed, the parties would continue the relationship and purchase at least 2 million gloves per month thereafter.

28.     In response, on about December 2020, Truong represented to Stuart Imel of Fenix that Slap Gear had a Vietnamese source, T&T, that could manufacture and deliver 660,000 boxes of the FDA-approved Nitrile gloves within a short period of time. Mr. Imel informed Defendants Truong and Slap Gear that its big customer intended to sell (retail) the Nitrile gloves to its customers, including, but not limited to, the United States Department of Veterans Affairs, State of Texas, and State of Arkansas ("SperiWorks Customers"). Fenix told Truong that it was very important that T&T be a legitimate source for the gloves, and it have the capability to meet the 660,000-box demand in a short time and to continue the parties' relationship. While Mr. Imel did not identify SperiWorks in its conversations with Truong because of competition concerns, he did tell Truong that Fenix was essentially brokering the purchase for its big customer for which it would receive a commission. He told Truong that his customer would be providing the funds for the purchase provided it received (through Fenix) the necessary assurances from Truong, Slap Gear and T&T that T&T was a legitimate source

SKT Law, P.C.
7755 Center Avenue, Suite 1225
Huntington Beach, California 92647
T: (949) 523-3333; F: (949) 523-3003

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

that could meet their time constraints and the 660,000 -box demand. In response, Truong bragged she had previously arranged delivery of 6 million boxes of gloves a month on multiple occasions with T&T and that T&T had the ability to meet Fenix's demand. Truong maintained that Slap Gear, as the exclusive distributor for T&T, had the expertise, relationships, and personnel in Vietnam to oversee and successfully execute the transaction with T&T within a short time frame. Truong provided Fenix a purported "Authorized Distributor Certificate" as evidence of the exclusive relationship between Slap Gear and T&T and to vouch for the legitimacy of T&T. Truong also provided to Fenix a brochure from T&T about its operations.




Mr. Imel shared with SperiWorks the T&T brochure and an Authorized Distributor Certificate, together with the assurances and representations made by Truong on behalf of Slap Gear and T&T as alleged in paragraphs 26 through 28. At all times, Plaintiffs understood that Truong was making these representations and assurances individually and as an officer and principal of Slap Gear on behalf of Slap Gear and as the sole distributor and authorized agent of T&T.

COMPLAINT AND DEMAND FOR JURY TRIAL

29.    In or about December 2020, in subsequent communications with Fenix, Truong represented and reiterated, with the intent that Fenix share the information with SperiWorks that:

(a) Truong and Slap Gear had institutional knowledge and expertise about how transactions for the purchase and sale of the KYO brand Nitrile gloves operate in Vietnam;

(b) Truong and Slap Gear had resources and personnel in Vietnam to provide oversight into the inspection of the Nitrile gloves before they left Vietnam;

 (c) Truong and Slap Gear had resources and personnel to provide oversight over the transfer of the Nitrile gloves after they left Vietnam.

(d) Slap Gear is the exclusive distributor of the KYO Glove brand in the United States;

( e)  Slap Gear was the sole distributor for T&T;

(f)  T&T had the capability to manufacture and deliver the 660,000 boxes of the Nitrile gloves within the required time period of 35 days;

(g)   Truong and Slap Gear's allocation was 6 million boxes of gloves a month on multiple occasions;

(h) Truong and Slap Gear had been working with T&T to procure the KYO brand Nitrile gloves for almost a year without any delays or issues with performance;

(i)   Truong and Slap Gear had a strong, long-standing relationship with the owner of T&T; and

(j) Truong and Slap Gear would ensure that Fenix could contract directly with T&T and that such agreement would be executed and carried out in a timely manner without issue.

SKT LAW, P.C.
7755 CENTER AVENUE, SUITE 1225
HUNTINGTON BEACH, CALIFORNIA  92647
T: (949) 523-3333; F: (949) 523-3003

COMPLAINT AND DEMAND FOR JURY TRIAL

At all times, Plaintiffs understood that Truong, was making these representations individually and as an officer and principal of Slap Gear on behalf of Slap Gear and as the sole distributor and authorized agent of T&T.

30.     Fenix also stressed to Truong and Slap Gear on multiple occasions that "time was of the essence" for the manufacture and delivery by T&T of the 660,000 boxes of Nitrile gloves because there was an immediate need of the big customer's customers, including, but not limited to, the United States Department of Veterans Affairs, State of Texas, and State of Arkansas, to fight the ongoing COVID 19 pandemic. In response, Truong and Slap Gear repeatedly assured Fenix that they could and would facilitate and ensure the timely manufacture and delivery FOB Vietnam by T&T of 660,000 boxes of Nitrile gloves. As contemplated by its role in brokering the purchase, Fenix shared these assurances with SperiWorks.

**II.     Fenix's Reliance on Truong and Slap Gear's Misrepresentations**

31.     In reliance on Truong and Slap Gear's representations and Slap Gear's role as the sole distributor for T&T, Fenix entered into a Master's Services Agreement with Defendant Slap Gear on December 18, 2020 ("the MSA") whereby Slap Gear promised it would negotiate with T&T the purchase, transport, and delivery of 660,000 boxes (66,000 cartons and each box containing 100 gloves) of KYO brand Nitrile gloves ("the Goods') from the T&T factory in Vietnam Free on Board ("FOB") Vietnam and that Slap Gear would monitor and assure the timely delivery of the ordered product to SperiWorks.

32.     Under the MSA, Slap Gear was contractually obligated to do the following, among other things:

      a.  Assist with negotiation and execution of the contract between Fenix and T&T for the Goods;

      b.  Serve as the local point of contact in Vietnam on behalf of Fenix for any communications with T&T about the Goods;

SKT Law, P.C.
7755 Center Avenue, Suite 1225
Huntington Beach, California 92647
T: (949) 523-3333; F: (949) 523-3003

SKT Law, P.C.
7755 Center Avenue, Suite 1225
Huntington Beach, California 92647
T: (949) 523-3333; F: (949) 523-3003

c.  Have a representative present during any SGS inspection of any Goods;

d.  Have a representative present at the delivery point of Vietnam during the transfer of the Goods;

e.  Advise on and refer to Fenix logistics providers to Fenix and any customers of Fenix.

33.   Slap Gear's involvement in the transaction was critical, as the turnaround for the production and shipment of the Goods was only four months.

34.   Even though Slap Gear's work (and the entire initial transaction) should have taken no more than two months, Fenix agreed to pay Slap Gear $237,600.00, of which $198,000.00 was to be payable to Slap Gear upon Fenix making its initial deposit with T&T, and the remainder payable in subsequent and equal portions as stated in the MSA. Fenix agreed to pay such a significant sum to Slap Gear because its role in the transaction was critical. Pursuant to Truong's request, however, Fenix paid Slap Gear $200,000 upon execution of the MSA from $200,000 in funds it received from SperiWorks for the MSA.

35.   In reliance on Truong (Slap Gear)'s representations and its role as a sole distributor for T&T, on December 20, 2020, Fenix, by and through Truong of Slap Gear, entered into a Sale & Purchase Agreement with T&T for the Goods (the "SPA"). The total purchase price for the Goods was $5,742,000 USD. Pursuant to the SPA, Fenix was required to pay a 50% deposit in the amount of $2,871,000 USD shortly after executing the SPA, which it did upon receiving those funds from its customer SperiWorks specifically for the SPA.

36.   In reliance on the representations of Truong and Slap Gear as set forth in paragraphs 26, 28-30 above, Fenix accepted the $200,000 from SperiWorks for payment to Slap Gear on the MSA. In reliance on the representations of Truong and Slap Gear as set forth in paragraphs 26, 28-30 above, Fenix accepted from SperiWorks the $2,871,000 USD initial deposit required by T&T for the SPA.

37.     Following the execution of the MSA and SPA, Fenix communicated with T&T almost exclusively through Truong of Slap Gear as Slap Gear was required by the MSA to provide complete oversight of the manufacture and delivery as alleged herein above in paragraphs 31-32.

### III.     SperiWorks' Reliance on Truong, Slap Gear and T&T's Misrepresentations

38.     As alleged herein above, all the representations and assurances made by Truong individually and on behalf of Slap Gear and T&T were conveyed by Stuart Imel of Fenix to SperiWorks. In reliance on the representations made by Truong individually and on behalf of Slap Gear to SperiWorks as alleged in paragraphs 26, 28-30 above, SperiWorks paid the $200,000 to Fenix for the deposit required by Truong for the MSA. But for these representations, SperiWorks would not have provided to Fenix the required deposits or any sum whatsoever.

39.     In further reliance on Truong's representations, individually and on behalf of Slap Gear and T&T, as alleged in paragraph 26, 28-30 above, SperiWorks also paid the $2,871,000 to Fenix for the required initial deposit to T&T under the SPA.  But for these representations, SperiWorks would not have provided to Fenix the required deposits or any sum whatsoever.

40.     In further reliance on the representations made by Truong and Slap Gear as alleged in paragraphs 26, 28-30 above, SperiWorks contracted with the SperiWorks Customers for the purchase and delivery to said customers of the Nitrile gloves it expected to timely receive from T&T, with Truong and Slap Gear's oversight.

### IV.     T&T and Slap Gear Fail To Deliver The Goods As Promised.

41.     On February 1, 2021, Fenix received written notice that T&T was delaying the first delivery under the SPA due to "force majeure."  Article 9.C. of the SPA requires that a party affected by force majeure produce to the other party documents issued by a local governmental authority proving the occurrence of the

SKT LAW, P.C.
7755 CENTER AVENUE, SUITE 1225
HUNTINGTON BEACH, CALIFORNIA 92647
T: (949) 523-3333; F: (949) 523-3003

SKT Law, P.C.
7755 Center Avenue, Suite 1225
Huntington Beach, California 92647
T: (949) 523-3333; F: (949) 523-3003

force majeure event. T&T did not provide the required documentation to establish a force majeure event.

42.     Between February and October 2021, T&T provided only 161,200 boxes of the 660,000 boxes promised as follows:

| 2/6/21 | Untimely delivery of 34,910 boxes |
|---|---|
| 3/4/21 | Untimely delivery of 50,090 boxes |
| 5/18/21 | Untimely delivery of 6,200 boxes |
| 10/7/21 | Untimely delivery of 70,000 boxes |

43.     At each juncture, to keep Fenix and SperiWorks hopeful that the boxes would be forthcoming as promised and to induce them to enter into modified delivery schedules (and to not pursue legal action), T&T and Slap Gear continued making materially false misrepresentations to Fenix and SperiWorks. For example, in April 2021, T&T offered a revised schedule for delivery and the delivery by sea of all containers still due under the SPA. Fenix accepted this offer. T&T's revised



COMPLAINT AND DEMAND FOR JURY TRIAL

schedule never materialized as represented and agreed. As another egregious example, in May and July 2021, Truong sent pictures and videos to Fenix as proof that the gloves did in fact exist and would be delivered to Fenix as promised knowing that Fenix would then share these videos with SperiWorks. These photographs and videos were all blatant misrepresentations. The goods were never delivered to SperiWorks as promised. This was Slap Gear and T&T's pattern—lull Fenix and SperiWorks into a false sense of security, never perform in the manner promised, disappear, reappear, and repeat the same when Fenix and SperiWorks threatened to sue. Slap Gear and T&T even began negotiating additional contracts with Fenix for deliveries of larger monthly quantities of gloves, as originally discussed. But, again, Slap Gear and T&T's promises never materialized.

44. Upon further recent investigation, the "brochure" provided by Truong purportedly from T&T contains many obvious misrepresentations. For example, pages 26 and 27 allegedly contain "Factory Information" of T&T:




COMPLAINT AND DEMAND FOR JURY TRIAL

But these images, which are the only "information" provided about T&T's purported factory, are stock images readily available on Google, and are not pictures of their purported factory. Searching "gloves factory stock photo" on Google Images generates the images on the left side above from shutterstock.com, and the photographs on the right side are used as stock photographs on at least one other website. Based on how the photograph is used on the other website, it appears that the photograph is not even a picture of a glove manufacturing facility, but actually a semi-conductor factory.




45.      The brochure also claims T&T is "Registered FDA 510K." However, not only is there no such registration, but on or about April 19, 2021, on a call with a representative from T&T and nonparty BlueBio, the representative from BlueBio admitted they had not submitted any paperwork on behalf of T&T to the FDA for the 510K application. Thus, this statement is a knowing misrepresentation.

///

///

SKT LAW, P.C.
7755 CENTER AVENUE, SUITE 1225
HUNTINGTON BEACH, CALIFORNIA 92647
T: (949) 523-3333; F: (949) 523-3003

SKT LAW, P.C.
7755 CENTER AVENUE, SUITE 1225
HUNTINGTON BEACH, CALIFORNIA 92647
T: (949) 523-3333; F: (949) 523-3003

**VI. Plaintiffs Discover That, Contrary to Truong and Slap Gear's Representations, T&T Did Not Have The Capability To Manufacture and Deliver 660,000 Boxes Of Nitrile Gloves Within 35 Days Of The Effective Date Of The T&T Agreement.**

46.     Following Slap Gear and T&T's failure to deliver the Goods within 35 days of the effective date of the T&T Agreement and following the expiration of the mutually agreed upon extended delivery schedule, Plaintiffs discovered, through hired investigators in Vietnam, that T&T was incapable of manufacturing and delivering 660,000 boxes of Nitrile gloves within the allotted time frame of 35 days of the T&T Agreement. Prior to that discovery Fenix and SperiWorks had relied exclusively on the representations by Truong, Slap Gear and T&T regarding T&T's manufacturing capability (i.e., 6 million boxes of gloves a month on multiple occasions)

**VII. Plaintiffs Have Incurred Significant Damages.**

47.     As a result of the Defendants failure to timely deliver the 660,000 boxes of Nitrile gloves and otherwise defrauding Plaintiffs, both Fenix and SperiWorks suffered significant damage evidenced, in part, by the following:

a.     Time was truly of the essence for the transaction. When Plaintiffs agreed to purchase each box from T&T, they purchased the boxes for $8.70 and were able at that time to sell the boxes for approximately $16 USD. Due to changes in market conditions, as supply caught up with demand, the resale price of each box of gloves dropped to $5 per box. The price for transportation of the goods also increased. Initially, Plaintiffs paid $4,000 per container, but then later were forced to pay $20,000 per container for shipping on late delivered gloves and replacement gloves.

b.     Truong and SlapGear's failure to ensure the timely delivery of the 660,000 boxes to SperiWorks, interfered with Fenix's ability to meet its obligations to SperiWorks for which Fenix was to be paid a commission.

c.      The failure of Speriworks to receive the 660,000 boxes of gloves in a timely manner or otherwise, interfered with its ability to meet its contractual obligations to the SperiWorks Customers resulting in lost profits to SperiWorks.

d.      Defendants' false promises lulled Plaintiffs into turning down other suppliers who delivered significant quantities of gloves to other purchasers known to Plaintiffs.

e.      Defendants' refusal to refund the $200,000 and to refund the balance from the deposit of $2,871,000 ($1,903.832.38) to SperiWorks despite demand, has deprived SperiWorks of funds that otherwise would have been available to it to purchase Nitrile gloves to meet its contractual obligations to the SperiWorks Customers.

f.      Defendants Truong, Slap Gear and Does 1-20's fraud has caused and continues to cause damage to Plaintiff Fenix's reputation in the industry as a reputable wholesaler of PPE resulting in a loss of goodwill.

g.      Defendants Truong, Slap Gear, T&T and Does 1-20's fraud has caused and continues to cause damage to Plaintiff SperiWorks' reputation in the industry as a reputable retailer of PPE resulting in a loss of goodwill.

## First Cause of Action

### (Fraud -Intentional Misrepresentation)

### (By Plaintiffs Fenix Against Defendants Slap Gear,

### Truong and Does 1-20)

48.      Plaintiff Fenix incorporates by reference paragraphs 1 through 47 as though fully set forth herein.

49.      Commencing in early December 2020, Defendant Truong individually and on behalf of Slap Gear and Does 1-20 made the representations alleged in paragraphs 26, 28-30 above to Fenix. At all times relevant, Plaintiff Fenix understood that Truong's representations alleged in paragraphs 26, 28-30 above, as

SKT LAW, P.C.
7755 CENTER AVENUE, SUITE 1225
HUNTINGTON BEACH, CALIFORNIA  92647
T: (949) 523-3333; F: (949) 523-3003

related to SlapGear, were being made by Truong in her individual capacity, as well as, on behalf of Slap Gear, as its principal and officer.

50.    Defendants' Truong and Slap Gear and Does 1-20's representations were false. The true facts were that T&T did not have the capability to manufacture and deliver the 660,000 boxes of Nitrile gloves (6,600,000 gloves) within 35 days and  produce  millions of gloves monthly.  T&T had only two machines and the capability of manufacturing 1,000,000 gloves in a one years' time. Further, other than negotiating the T&T SPA agreement to facilitate T&T acquisition of the consideration required by the SPA, Truong and Slap Gear had no intent of actively facilitating the timely delivery of the gloves, instead "going dark" (ceasing all communications with Plaintiffs) when T&T notified Plaintiffs of its inability to fulfill the contract.

51.    Defendants Truong and Slap Gear and Does 1-20 knew that the representations alleged in paragraphs 26, 28-30 above, were false when they made them, or they made the representations recklessly and without regard for its truth.

52.    Defendant Truong and Slap Gear and Does 1-20 made the representations, alleged in paragraphs 26, 28-30 above, with the intent that Plaintiff Fenix rely thereon.

53.    Plaintiff Fenix relied on Defendants' Truong, Slap Gear and Does 1-20's representations, alleged in paragraphs 26, 28-30 above, in not seeking a source for the Nitrile gloves elsewhere that would have had the capability to manufacture and deliver the 660,000 boxes of the Nitrile gloves within 35 days and produce millions of gloves monthly. Plaintiff Fenix further relied on the Defendants' Truong, Slap Gear and Does 1-20's representations, alleged in paragraphs 26, 28-30 above, by entering into the MSA and SPA. Plaintiffs Fenix further relied on Defendants' Truong, Slap Gear and Does 1-20's representations, alleged in paragraphs 26, 28-30 above, by facilitating the payment to Truong and Slap Gear of $200,000 and the payment to T&T of $2,871,000.

SKT LAW, P.C.
7755 CENTER AVENUE, SUITE 1225
HUNTINGTON BEACH, CALIFORNIA 92647
T: (949) 523-3333; F: (949) 523-3003

SKT LAW, P. C.
7755 CENTER AVENUE, SUITE 1225
HUNTINGTON BEACH, CALIFORNIA 92647
T: (949) 523-3333; F: (949) 523-3003

54.     Plaintiff Fenix's reliance was reasonable and justified under the circumstances because it had no reason to believe that the representations, alleged in paragraphs 26, 28-30 above, were false.

55.     Plaintiff Fenix was harmed by Defendants Truong, Slap Gear and Does 1-20's fraud because its customer SperiWorks did not timely receive the 660,000 boxes of gloves for which Fenix would have received a commission. Instead, SperiWorks received only a delayed shipment of a small portion of the gloves ordered resulting in a lost commission to Fenix. Fenix was further harmed by Defendants Truong, Slap Gear and Does 1-20's fraud by causing the required deposit for the gloves of $2,871,000 to be paid to T&T, the balance of which T&T now refuses to refund to SperiWorks despite demand, thereby interfering with Fenix's contractual relationship with SperiWorks. Fenix was further harmed by Defendants Truong, Slap Gear and Does 1-20's fraud because it caused to be paid $200,000 to Slap Gear and Truong for agreed services never performed-Slap Gear and Truong did not ensure the timely manufacture and delivery of 660,000 boxes of gloves to SperiWorks. Further, Defendants Truong, Slap Gear and Does 1-20's fraud has caused and continues to cause damage to Plaintiff Fenix's reputation in the industry as a reputable wholesaler of PPE.

56.     Defendants' false representations, alleged in paragraphs 26, 28-30 above, was a substantial factor in causing Plaintiff Fenix harm.

57.     As a proximate result, Plaintiff Fenix has been damaged in a sum in excess of $14,000,000, according to proof, including special damages, in the form of : $1,903,832.38  wrongfully withheld by T&T, recoverable by Fenix from Slap Gear pursuant to contract terms;  $203,100.00 advanced to Slap Gear for goods never delivered;  lost profits of $114,494.90; lost opportunity damages of $12,000,000.00; loss of goodwill and unnecessary expenses, which are  associated with investigations of defendants and efforts to obtain timely compliance with the MSA and SPA, according to proof at the time of trial.

SKT Law, P.C.
7755 Center Avenue, Suite 1225
Huntington Beach, California 92647
T: (949) 523-3333; F: (949) 523-3003

58.     In engaging in the tortious conduct described in this cause of action, Defendants, and each of them, acted fraudulently, oppressively, maliciously and with willful and conscious disregard of Plaintiff's rights. Accordingly, Plaintiff Fenix is entitled to exemplary and punitive damages.

## Second Cause of Action

### (Fraud-Intentional Misrepresentation)

### (By Plaintiff SperiWorks Against Defendants Slap Gear, Truong, T&T and Does 5-20)

59.     Plaintiff SperiWorks incorporates by reference paragraphs 1 through 47 as though fully set forth herein.

60.     Commencing in early December 2020, Defendant Truong and Does 5-20 made the representations, alleged in paragraphs 26, 28-30 above, to SperiWorks. At all times relevant, Plaintiff SperiWorks understood that Truong's representations alleged in paragraphs 26, 28-30 above, as related to SlapGear, were being made by Truong in her individual capacity as well as on behalf of Slap Gear. At all times relevant, Plaintiff also understood that the representations made by Truong, concerning T&T's capabilities and T&T's promises, were being made by Truong as an authorized agent- sole distributor of T&T.

61.     Defendants Truong, Slap Gear, T&T and Does 5-20's representations, alleged in paragraphs 26, 28-30 above, were false. The true facts were that T&T did not have the capability to manufacture and deliver the 660,000 boxes of Nitrile gloves within 35 days and millions of gloves per month and in fact had only two machines and the capability of manufacturing 1,000,000 gloves in a one years' time. Further, other than negotiating the T&T agreement, to facilitate T&T acquisition of the consideration required by the SPA, Truong and Slap Gear had no intent of actively facilitating the timely delivery of the gloves, instead "going dark" (ceasing all communications with Plaintiffs) when T&T notified Plaintiffs of its inability to fulfill the contract. The Defendants Truong, Slap Gear, T&T and Does

SKT Law, P.C.
7755 Center Avenue, Suite 1225
Huntington Beach, California 92647
T: (949) 523-3333; F: (949) 523-3003

1-20's misrepresentations, alleged in paragraphs 26, 28-30 above, were just a fraudulent device to steal Plaintiff SperiWorks' money.

62.    Defendants Truong, Slap Gear, T&T and Does 5-20 knew that the representations, alleged in paragraphs 26, 28-30 above, were false when they made them, or they made the representations recklessly and without regard for the truth.

63.    Defendant Truong, Slap Gear, T&T and Does 5-20 made the representations, alleged in paragraphs 26, 28-30 above, with the intent that Plaintiff SperiWorks rely thereon.

64.    Plaintiff SperiWorks' relied on Defendants' Truong, Slap Gear, T&T and Does 5-20's representations, alleged in paragraphs 26, 28-30 above, in not seeking an alternate source for the Nitrile gloves that would have had the capability to manufacture and deliver the 660,000 boxes of the Nitrile gloves within 35 days and  millions of gloves per month. Plaintiff SperiWorks further relied on the Defendants' Truong, Slap Gear and Does 5-20's representations, alleged in paragraphs 26, 28-30 above, by providing to Fenix the $200,000 deposit required by the MSA. Plaintiff SperiWorks further relied on Defendants' Truong, Slap Gear, T&T and Does 5-20's representations, alleged in paragraphs 26, 28-30 above, by providing the $2,871,000 deposit for T&T as required by the SPA. Plaintiff SperiWorks further relied on the Defendants' Truong, Slap Gear and Does 5-20's representations, alleged in paragraphs 26, 28-30 above, by entering into contracts with SperiWorks Customers for Nitrile gloves it ultimately was unable to deliver to SperiWorks Customers because of Defendants' fraud.

65.    Plaintiff SperiWorks' reliance was reasonable and justified under the circumstances because it had no reason to believe that the representations, alleged in paragraphs 26, 28-30 above, were false.

66.    Plaintiff SperiWorks was harmed by Defendants Truong, Slap Gear, T&T and Does 5-20's fraud because it did not timely receive the 660,000 boxes of gloves or millions of gloves per month as discussed. Instead, it received only a

SKT Law, P.C.
7755 Center Avenue, Suite 1225
Huntington Beach, California 92647
T: (949) 523-3333; F: (949) 523-3003

delayed shipment of a small portion of the gloves ordered rendering it unable to meet its contractual obligations to the SperiWorks Customers causing SperiWorks a loss of profits. Plaintiff SperiWorks was further harmed by Defendants Truong, Slap Gear, T&T and Does 5-20's fraud because it provided the $200,000 deposit for the MSA for services never performed, and it provided the $2,871,000 deposit for the SPA product never delivered. Despite demand, Truong and Slap Gear refuse to refund the $200,000 to SperiWorks. Despite demand, T&T refuses to refund to SperiWorks the balance of the $2,871,000 SPA deposit due for product never delivered. Further, Defendants Truong, Slap Gear, T&T and Does 5-20's fraud has caused and continues to cause damage to Plaintiff SperiWorks in the form of lost opportunity damages, incidental damages and damage to its reputation in the industry as a reputable retail seller of PPE.

67.    Defendants' false representations were a substantial factor in causing SperiWorks harm.

68.    As a proximate result, Plaintiff SperiWorks has been damaged in a sum in excess of $57,00,000.00, according to proof, including special damages, in the form of: lost profits of $3,187,140.00; lost opportunity damages of $54,000,000.00; loss of goodwill and unnecessary expenses associated with investigations of defendants and efforts to obtain timely compliance with the MSA and SPA, according to proof at the time of trial. SperiWorks also has suffered incidental damages in the form of increased shipping expenses of $165,353.73, interest expense of $62,162.80 and storage costs of $76,800.00.

69.    In engaging in the tortious conduct described in this cause of action, Defendants, and each of them, acted fraudulently, oppressively, maliciously and with willful and conscious disregard of Plaintiff's rights. Accordingly, Plaintiff SperiWorks is entitled to exemplary and punitive damages.

///

///

SKT Law, P.C.
7755 Center Avenue, Suite 1225
Huntington Beach, California 92647
T: (949) 523-3333; F: (949) 523-3003

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Third Cause of Action**

**(Conspiracy to Defraud)**

**(By Plaintiffs SperiWorks Against Defendants Slap**

**Gear, Truong, T&T and Does 5-20)**

70.     Plaintiffs incorporate by reference paragraphs 1 through 47 and 59-69 as though fully set forth herein.

71.     Commencing in early December 2020 to present Defendants Slap Gear, Truong, T&T and Does 5-20, and each of them, together with other co-schemers, known and unknown to Plaintiffs, conspired and agreed among themselves to steal funds from Plaintiff SperiWorks by falsely characterizing T&T as a legitimate source for Nitrile gloves capable of manufacturing and delivering 660,000 boxes of Nitrile gloves within 35 days and millions of boxes monthly .

72.     In furtherance of the conspiracy, Defendants Slap Gear, Truong, T&T, Does 5-20, and other unnamed coconspirators, and each of them, engaged in the fraud against SperiWorks as alleged in paragraphs 59-69 above to accomplish the objectives of the conspiracy.

73.     Plaintiff SperiWorks was harmed by Defendants Truong, Slap Gear, T&T and Does 5-20's conspiracy to commit fraud because SperiWorks did not timely receive the 660,000 boxes of gloves as promised and millions of gloves per month as discussed. Instead, it received only a delayed shipment of a small portion of the gloves ordered rendering it unable to meet its contractual obligations to the SperiWorks Customers causing SperiWorks a loss of profits. Plaintiff SperiWorks was further harmed by Defendants Truong, Slap Gear, T&T and Does 5-20's conspiracy to commit fraud because it provided the $200,000 deposit for the MSA and the $2,871,000 USD deposit for the SPA for services never performed, and product never provided, which sums and or portions thereof Defendants, respectively, have refused to return despite demand.   Further, Defendants Truong, Slap Gear, T&T and Does 5-20's conspiracy to defraud has caused and continues

to cause damage to Plaintiff SperiWorks reputation in the industry as a reputable retail seller of PPE.

74. Defendants' false representations were a substantial factor in causing SperiWorks harm.

75. As a proximate result, Plaintiff SperiWorks has been damaged in a sum in excess of $57,000,000, according to proof, including special damages, in the form of: lost profits of $3,187,140.00; lost opportunity damages of $54,000,000.00; loss of goodwill and unnecessary expenses associated with investigations of defendants and efforts to obtain timely compliance with the MSA and SPA, according to proof at the time of trial. SperiWorks also has suffered incidental damages in the form of increased shipping expenses of $165,353.73, interest expense of $62,162.80 and storage costs of $76,800.00.

76. In engaging in the tortious conduct described in this cause of action, Defendants, and each of them, acted fraudulently, oppressively, maliciously and with willful and conscious disregard of Plaintiff's rights. Accordingly, Plaintiff SperiWorks is entitled to exemplary and punitive damages.

**Fourth Cause of Action**

**(Conversion and Aiding and Abetting Conversion)**

**(By Plaintiff SperiWorks against Defendants Truong, Slap Gear, T&T and Does 5-20)**

77. Plaintiff incorporates by reference paragraphs 1 through 47 and 59-76 as though fully set forth herein.

**Conversion of the balance of $2,871,000 or $1,903.832.38**

78. Plaintiff SperiWorks at all times had a right to possess the $**1,903.832.38** it had in its possession in early December 2020.

79. Defendant T&T and Does 5-20 substantially and wrongfully interfered with SperiWorks right to possession of its $**1,903.832.38** when, through its agent and sole distributor Slap Gear and Truong, T&T fraudulently caused

SKT LAW, P.C.
7755 CENTER AVENUE, SUITE 1225
HUNTINGTON BEACH, CALIFORNIA 92647
T: (949) 523-3333; F: (949) 523-3003

SKT LAW, P.C.
7755 CENTER AVENUE, SUITE 1225
HUNTINGTON BEACH, CALIFORNIA 92647
T: (949) 523-3333; F: (949) 523-3003

Plaintiff SperiWorks to deposit with T&T, through the Plaintiff Fenix, a deposit comprised in part of the **$1,903.832.38** possessed by SperiWorks. T&T and Does 5-20 now wrongfully exercise complete dominion and control over the deposit provided by SperiWorks.

80.     Defendants Truong, Slap Gear and Does 5-20 aided and abetted T&T's conversion of the **$1,903.832.38** when, as T&T's sole distributor and otherwise, they falsely misrepresented to SperiWorks in December of 2020 that T&T had the capability to manufacture and deliver the 660,000 boxes of  Nitrile gloves within 35 days and that T&T would timely perform the SPA, knowing that T&T was wholly incapable of manufacturing and delivering the 660,000 boxes of Nitrile gloves within 35 days. Defendants Truong, Slap Gear and Does 5-20 have further aided and abetted T&T's conversion of the **$1,903.832.38** by refusing to interface with T&T to obtain the refund of the $1,903,832.38 due SperiWorks for product never delivered by T&T.

81.     Despite demand, Defendant T&T refuses to refund the balance of the $2,871,000, or **1,903.832.38** due SperiWorks.

**Conversion of $200,000**

82.     Plaintiff SperiWorks at all times had a right to possess the $200,000 it had in its possession in early December 2020.

83.     Defendants Truong, SlapGear and Does 5-20 substantially and wrongfully interfered with SperiWorks right to possession of its $200,000 when Defendants and each of them fraudulently caused SperiWorks to provide its $200,000, through Plaintiff Fenix, as a deposit for Truong and Slap Gear's services under the MSA. Defendants Truong and Slap Gear and Does 5-20 now wrongfully exercise complete dominion and control over the deposit provided by SperiWorks.

84.     Despite demand, Defendants Truong and Slap Gear refuse to return the $200,000 to SperiWorks.

///

SKT LAW, P.C.
7755 CENTER AVENUE, SUITE 1225
HUNTINGTON BEACH, CALIFORNIA 92647
T: (949) 523-3333; F: (949) 523-3003

85.     Plaintiff SperiWorks was harmed by Defendants' conversion and/or aiding and abetting conversion.

86.     Defendants T&T Slap Gear, Truong and Does 5-20 conversion and aiding and abetting conversion was a substantial factor in causing Plaintiff SperiWorks harm.

87.     As a proximate result, Plaintiff SperiWorks has been damaged in a sum equal to the value of the converted deposits and/or remaining balance thereon, according to proof at the time of trial.

88.     In engaging in the tortious conduct described in this cause of action, Defendants, and each of them, acted fraudulently, oppressively, maliciously and with willful and conscious disregard of Plaintiff's rights. Accordingly, Plaintiff SperiWorks is entitled to exemplary and punitive damages.

## Fifth Cause of Action

### (Civil Theft in Violation of Penal Code section 496)

### (By Plaintiff SperiWorks against Defendants Truong, Slap Gear, T&T and Does 5-20)

89.     Plaintiff incorporates by reference paragraphs 1 through 47 and 59-88 as though fully set forth herein.

90.     California Penal Code section 496(a) provides, in relevant part,  that "[e]very person who … receives any property that has been stolen or that has been obtained in any manner constituting theft …., knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, sells, withholds, or aids in concealing, selling, or withholding any property from the owner knowing the property to be so stolen or obtained , [ is guilty of a criminal offense]."

91.     California Penal Code section 496(a) further provides that "[a] principal in the actual theft of property may be convicted pursuant to this section."
///

SKT LAW, P.C.
7755 CENTER AVENUE, SUITE 1225
HUNTINGTON BEACH, CALIFORNIA 92647
T: (949) 523-3333; F: (949) 523-3003

92.     California Penal Code section 484 defines "theft" to include "[e]very person who shall feloniously steal [or] take … the personal property of another " (theft of trick), or "who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money…or real or personal property" (theft by false pretenses)

93.     Beginning in early December 2020 and continuing to present, Defendants Truong, Slap Gear, T&T and Does 5-20, and each of them, received, withheld and/or aided in withholding funds had been fraudulently obtained and/or otherwise stolen and obtained by theft from SperiWorks as follows:

   (a) On or about December 2020 Defendants Truong, Slap Gear and Does 5-20 fraudulently caused to be paid, received, and withheld, a deposit of $200,000 made by SperiWorks through Plaintiff Fenix.

   (b) On or about December 2020 Defendants Truong, Slap Gear, T&T and Does 5-20, and each of them fraudulently caused to be paid, received and withheld by Defendant T&T a deposit of $2,871,000 made by SperiWorks through Plaintiff Fenix to T&T, of which $**1,903.832.38 is still being withheld by T&T.**

94.     As a direct and proximate result of these violations of the California Penal Code section 496(a), Plaintiff SperiWorks has been injured in the sum of $1,903,832.38 according to proof at the time of trial.

95.     California Penal Code section 496(a) provides, in relevant part, that "[a]ny person who has been injured in violation of subdivision (a) … may bring an action for three times the amount of actual damages, if any sustained by the plaintiff, costs of suit and reasonable attorney's fees."

96.     In engaging in the tortious conduct described in this cause of action, Defendants, and each of them, acted fraudulently, oppressively, maliciously and

with willful and conscious disregard of Plaintiff's rights. Accordingly, Plaintiff SperiWorks is entitled to exemplary and punitive damages.

**Sixth Cause of Action**

**(Intentional Interference with Contractual Relations)**

**(By Plaintiff Fenix Against Defendants Slap Gear, Truong and Does 1-20)**

97.    Plaintiffs incorporate by reference paragraphs 1 through 57 as though fully set forth herein.

98.    At all times relevant herein, Defendants Slap Gear, Truong and Does 1-20, and each of them, were aware of the existence of a contract by and between Fenix and SperiWorks whereby Fenix was to acquire as a wholesaler for SperiWorks, the 660,000 boxes of Nitrile gloves from T&T and that Fenix was looking to acquire even more boxes per month thereafter. Defendants Slap Gear, Truong and Does 1-20 knew of the relationship because SperiWorks had told Truong of the existence of these contracts prior to Fenix entering into the MSA and SPA. Since Truong was an officer/principal of Slap Gear, her knowledge of these relationships was imputed to Slap Gear.

99.    Defendants Slap Gear, Truong and Does 1-20's above alleged conduct, including their intentional misrepresentations concerning the manufacturing capability of T&T and their failure to ensure the timely manufacture and delivery of the 660,000 boxes as promised, prevented performance by Fenix of its contract with SperiWorks or made performance more expensive or difficult because Plaintiff Fenix was unable to deliver on its contract with SperiWorks for which it was to receive a commission.

100.    Defendants Slap Gear, Truong and Does 1-20, and each of them, intended to disrupt the performance of this contract or knew that disruption of performance was certain or substantially certain to occur if the 660,000 boxes of the Nitrile gloves were not timely manufactured and delivered as promised or Defendants were unable to produce large quantities of gloves thereafter.

101.   As a result of Defendants Slap Gear, Truong and Does 1-20's interfering conduct as herein alleged, Plaintiff Fenix has been harmed .

102.   Defendants' conduct was a substantial factor in causing Plaintiff Fenix's harm.

103.   As a proximate result, Plaintiff Fenix has been damaged in a sum in excess of $14,000,000, according to proof, including special damages, in the form of : $1,903,832.38 wrongfully withheld by T&T recoverable by Fenix from Slap Gear pursuant to contract terms;  $203,100.00 advanced to SlapGear for goods never delivered;  lost profits of $114,494.90; lost opportunity damages of $12,000,000.00; loss of goodwill and unnecessary expenses associated with investigations of defendants and efforts to obtain timely compliance with the MSA and SPA, according to proof at the time of trial.,

104.   In engaging in the tortious conduct described in this cause of action, Defendants, and each of them, acted fraudulently, oppressively, maliciously and with willful and conscious disregard of Plaintiff's rights. Accordingly, Plaintiff is entitled to exemplary and punitive damages.

## Seventh Cause of Action

### (Intentional Interference with Contractual Relations)
### (By Plaintiff SperiWorks Against Defendants Slap Gear, Truong and T&T and Does 5-20)

105.   Plaintiff incorporates by reference paragraphs 1 through 104 as though fully set forth herein.

106.   At all times relevant herein, Defendants Slap Gear, Truong, T&T and Does 5-20, and each of them, were aware of the existence of a contract by and between SperiWorks and the SperiWorks Customers consisting of third parties United States Department of Veterans Affairs, State of Texas, and State of Arkansas whereby upon receipt of the 660,000 boxes of Nitrile gloves purchased by Fenix from T&T, SperiWorks would pursuant to its respective sales contracts

SKT LAW, P.C.
7755 CENTER AVENUE, SUITE 1225
HUNTINGTON BEACH, CALIFORNIA 92647
T: (949) 523-3333; F: (949) 523-3003

SKT LAW, P.C.
7755 CENTER AVENUE, SUITE 1225
HUNTINGTON BEACH, CALIFORNIA 92647
T: (949) 523-3333; F: (949) 523-3003

1   with United States Department of Veterans Affairs, State of Texas, and State of

2   Arkansas, sell allocated portions of the 660,000 boxes of Nitrile gloves to United

3   States Department of Veterans Affairs, State of Texas, and State of Arkansas.

4   Defendants Slap Gear, Truong, T&T and Does 5-20 knew of the relationship

5   because Fenix and SperiWorks had told Truong of the existence of these contracts

6   prior to Fenix entering into the MSA and T&T Agreements and that there was a

7   substantial demand for even more boxes thereafter with the same customers. Since

8   Truong was an officer/principal of Slap Gear, her knowledge of these relationships

9   was imputed to Slap Gear. Further, since Truong was the sole distributor for T&T

10   and otherwise acting as its agent in negotiating the T&T agreement with Fenix, her

11   knowledge of these contracts was imputed to T&T.

12   107.   Defendants Slap Gear, Truong, T&T and Does 5-20's above alleged

13   conduct, including its intentional misrepresentations concerning the manufacturing

14   capability of T&T and their failure to ensure timely delivery of the 660,000 boxes

15   as promised, prevented performance by SperiWorks of its contracts  with United

16   States Department of Veterans Affairs, State of Texas, and State of Arkansas, or

17   made performance more expensive or difficult because Plaintiff SperiWorks was

18   unable to deliver on its contracts with  United States Department of Veterans

19   Affairs, State of Texas, and State of Arkansas as required by the terms of said third

20   party contracts.

21   108.   Defendants Slap Gear, Truong, T&T and Does 5-20, and each of

22   them, intended to disrupt the performance of these contracts or knew that

23   disruption of performance was certain or substantially certain to occur if the

24   660,000 boxes of the Nitrile gloves were not delivered as promised.

25   109.   As a result of Defendants' interfering conduct as herein alleged,

26   Plaintiff SperiWorks has been harmed.

27   110.   Defendants' conduct was a substantial factor in causing Plaintiff

28   SperiWorks' harm.

111.   As a proximate result, Plaintiff SperiWorks has been damaged in a sum in excess of $57,000,000, according to proof, including special damages, in the form of: lost profits of $3,187,140.00; lost opportunity damages of $54,000,000.00; loss of goodwill and unnecessary expenses associated with investigations of defendants and efforts to obtain timely compliance with the MSA and SPA, according to proof at the time of trial. SperiWorks also has suffered incidental damages in the form of increased shipping expenses of $165,353.73, interest expense of $62,162.80 and storage costs of $76,800.00.

112.   In engaging in the tortious conduct described in this cause of action, Defendants, and each of them, acted fraudulently, oppressively, maliciously and with willful and conscious disregard of Plaintiff's rights. Accordingly, Plaintiff is entitled to exemplary and punitive damages.

### Eighth Cause of Action

**(Intentional Interference with Prospective Economic Relations)**

**(By Plaintiff SperiWorks Against Defendants Slap Gear,**

**Truong, T&T and Does 5-20)**

113.   Plaintiffs incorporate by reference paragraphs 1- 112 as though fully set forth herein.

114.   Plaintiff SperiWorks and United States Department of Veterans Affairs, State of Texas, and State of Arkansas were in an economic relationship that would have resulted in an economic benefit to SperiWorks.

115.   Defendants Slap Gear, Truong, T&T and Does 5-20 knew of the relationship because SperiWorks had told Truong of the existence of these relationships prior to Fenix entering into the MSA and T&T Agreements. Since Truong was an officer/principal of Slap Gear, her knowledge of these relationships was imputed to Slap Gear. Further, since Truong was the sole distributor for T&T and otherwise acting as its agent in negotiating the T&T agreement with Fenix, her knowledge of these relationships was imputed to T&T.

SKT Law, P.C.
7755 Center Avenue, Suite 1225
Huntington Beach, California 92647
T: (949) 523-3333; F: (949) 523-3003

SKT LAW, P.C.
7755 CENTER AVENUE, SUITE 1225
HUNTINGTON BEACH, CALIFORNIA 92647
T: (949) 523-3333; F: (949) 523-3003

116.   That Defendants Slap Gear, Truong, T&T and Does 1-20, engaged in wrongful conduct, including fraudulently misrepresenting the manufacturing capability of T&T, which misrepresentation, though made by Truong, was imputed to Slap Gear and T&T because Truong was at all times holding herself out to Plaintiffs as the agent for Slap Gear and T&T.

117.   In engaging in this conduct, Defendants Slap Gear, Truong, T&T and Does 5-20, and each of them, intended to disrupt the relationships or knew that disruption of the relationships was certain to occur because T&T did not have the capability to manufacture the 660,000 Nitrile gloves within the designated time period or even more gloves thereafter on a monthly basis and had simply defrauded the Plaintiffs on this issue.

118.   SperiWorks relationships with United States Department of Veterans Affairs, State of Texas, and State of Arkansas were disrupted because SperiWorks was unable to provide them with the Nitrile gloves it expected to receive through the Slap Gear/Fenix and T&T/Fenix transactions.

119.   As a result, SperiWorks was harmed.

120.   Defendants Slap Gear, Truong, T&T and Does 1-20 wrongful conduct was a substantial factor in causing SperiWorks harm.

121.   As a proximate result, Plaintiff SperiWorks has been damaged in a sum in excess of $57,000,000, according to proof, including special damages, in the form of: lost profits of $3,187,140.00; lost opportunity damages of $54,000,000.00; loss of goodwill and unnecessary expenses associated with investigations of defendants and efforts to obtain timely compliance with the MSA and SPA, according to proof at the time of trial. SperiWorks also has suffered incidental damages in the form of increased shipping expenses of $165,353.73, interest expense of $62,162.80 and storage costs of $76,800.00

122.   In engaging in the tortious conduct described in this cause of action, Defendants, and each of them, acted fraudulently, oppressively, maliciously and

SKT LAW, P.C.
7755 CENTER AVENUE, SUITE 1225
HUNTINGTON BEACH, CALIFORNIA  92647
T: (949) 523-3333; F: (949) 523-3003

with willful and conscious disregard of Plaintiff's rights. Accordingly, Plaintiff is entitled to exemplary and punitive damages.

**Ninth Cause of Action**

**(Negligent Interference with Prospective Economic Relations)**

**(By Plaintiff SperiWorks Against Defendants Slap Gear, Truong,**

**T&T and Does 5-20)**

123.   Plaintiffs incorporate by reference paragraphs 1 through 47 and 59-68 as though fully set forth herein.

124.   Plaintiff SperiWorks and United States Department of Veterans Affairs, State of Texas, State of Arkansas, et al were in an economic relationship that would have resulted in a future economic benefit to Plaintiff SperiWorks.

125.   Defendants Slap Gear, Truong, T&T and Does 5-20 knew of these relationships.

126.   Defendants Slap Gear, Truong, T&T and Does 5-20 knew or should have known this relationship would be disrupted if they failed to act with reasonable care, by engaging in fraud against Plaintiff SperiWorks or otherwise made false promises concerning the timely delivery to SperiWorks of 600,000 boxes of gloves and the delivery of even more gloves on a monthly basis thereafter.

127.   Defendants Slap Gear, Truong, T&T and Does 5-20 failed to act with reasonable care.

128.   Defendants Slap Gear, Truong, T&T and Does 5-20 engaged in wrongful conduct through fraud.

129.   Plaintiff SperiWorks' relationship(s) were disrupted. Plaintiff SperiWorks was harmed.

130.   Defendants Slap Gear, Truong, T&T and Does 5-20 wrongful conduct was a substantial factor in causing Plaintiff SperiWorks' harm.

///

34

131.   As a proximate result, Plaintiff SperiWorks has been damaged in a sum in excess of $57,000,000, according to proof, including special damages, in the form of: lost profits of $3,187,140.00; lost opportunity damages of $54,000,000.00; loss of goodwill and unnecessary expenses associated with investigations of defendants and efforts to obtain timely compliance with the MSA and SPA, according to proof at the time of trial. SperiWorks also has suffered incidental damages in the form of increased shipping expenses of $165,353.73, interest expense of $62,162.80 and storage costs of $76,800.00 .

## Tenth Cause of Action

### (Breach of the Master Services Agreement)

### (By Plaintiff Fenix Against Defendant Slap Gear and Does 1-10)

132.   Plaintiff incorporates by reference paragraphs 1 through 47 as though fully set forth herein.

133.   Plaintiff Fenix entered into a valid and binding contract with Defendant Slap Gear, in the form of the Master Services Agreement ("MSA".)

134.   Plaintiff Fenix performed all obligations required by it under the MSA except as otherwise excused by the wrongful acts of Slap Gear.

135.   The MSA required Defendant to, among other things, act as a local point of contact in Vietnam on behalf of Fenix in any communication with T&T regarding the Goods; have a representative present during any SGS inspection of any goods;  have a representative present at the delivery point of Vietnam during transfer of the goods; and to otherwise ensure the delivery of the 660,000 boxes of Nitrile gloves to SperiWorks within 35 days of the effective date of the T&T Agreement.

136.   Defendants Slap Gear and Does 1-10 breached the MSA by, among other things: (a)  failing to ensure the delivery of the 660,000 boxes of Nitrile gloves to SperiWorks within 35 days of the effective date of the T&T Agreement.

137.   Plaintiff Fenix has been harmed by Defendants' breach.

SKT LAW, P.C.
7755 CENTER AVENUE, SUITE 1225
HUNTINGTON BEACH, CALIFORNIA 92647
T: (949) 523-3333; F: (949) 523-3003

138.   Defendants' breach was a substantial factor in causing Plaintiff Fenix's harm.

139.   As a proximate result, Plaintiff Fenix has been damaged in a sum in excess of $14,000,000, according to proof, including consequential damages, in the form of : $1,903,832.38 wrongfully withheld by T&T as recoverable by Fenix from Slap Gear  pursuant to contract terms; $203,100.00 advanced to Slap Gear for goods never delivered; lost profits of $114,494.90; lost opportunity damages of $12,000,000.00; loss of goodwill and unnecessary expenses associated with investigations of defendants and efforts to obtain timely compliance with the MSA and SPA, according to proof at the time of trial.

### Eleventh Cause of Action

### (Breach of Covenant of Good Faith and Fair Dealing)

### (By Plaintiff Fenix Against Defendant Slap Gear and Does 1-10)

140.   Plaintiff Fenix incorporates by reference paragraphs 1 through 47 as though fully set forth herein.

141.   There is implied in every contract a covenant that neither party to the contract will do anything to deprive the other of the benefits of the contract.

142.   Defendants Slap Gear and Does 1-10 breached the implied covenant of good faith and fair dealing by concealing from Plaintiff Fenix, Slap Gear's inability to perform the MSA as related to its ensuring the timely delivery of gloves because T&T was unable to manufacture and timely deliver 660,000 boxes of Nitrile gloves to SperiWorks within 35 days of the effective date of the T&T Agreement, instead making false excuses for the delay.

143.   Defendants' breach was a substantial factor in causing Plaintiff Fenix's harm.

144.   As a proximate result, Plaintiff Fenix has been damaged in a sum in excess of $14,000,000, according to proof, including consequential damages, in the form of : $1,903,832.38 wrongfully withheld by T&T as recoverable by Fenix

SKT LAW, P.C.
7755 CENTER AVENUE, SUITE 1225
HUNTINGTON BEACH, CALIFORNIA 92647
T: (949) 523-3333; F: (949) 523-3003

SKT LAW, P.C.
7755 CENTER AVENUE, SUITE 1225
HUNTINGTON BEACH, CALIFORNIA 92647
T: (949) 523-3333; F: (949) 523-3003

from Slap Gear pursuant to contract terms; $203,100.00 advanced to Slap Gear for goods never delivered; lost profits of $114,494.90; lost opportunity damages of $12,000,000.00; loss of goodwill and unnecessary expenses, according to proof, associated with investigations of defendants and efforts to obtain timely compliance with the MSA and SPA, according to proof at the time of trial.

**Twelfth Cause of Action**

**(Unjust Enrichment)**

**(By Plaintiff SperiWorks Against Defendants Truong,**

**Slap Gear, T&T and Does 5-20)**

145.    Plaintiffs incorporate by reference paragraphs 1 through 144 as though fully set forth herein.

146.    SperiWorks provided the $200,000 for the deposit required by the MSA. Following discovery of Defendants' fraud as herein alleged and despite demand, Truong and Slap Gear and Does 5-20 refuse to return the $200,000 to SperiWorks. Truong and Slap Gear and Does 5-20 have been unjustly enriched by their retention of the fraudulently obtained $200,000 and any profits derived therefrom.

147.    SperiWorks provided the $2,871,000 for the deposit required by the SPA. Following discovery of Defendants' fraud as herein alleged and despite demand, T&T and Does 5-20 refuse to refund to SperiWorks the $1,903,832.38 unearned balance due from the $2,871,000 deposit. T&T and Does 1-20 have been unjustly enriched by their retention of the balance of $1,903,832.38 and any profits derived therefrom.

**Thirteenth Cause of Action**

**(Unfair Business Practices – Bus. & Prof. Code §§ 17200 et seq.)**

**(By Plaintiffs Fenix and SperiWorks Against Defendants)**

148.    Plaintiffs incorporate by reference paragraphs 1 through 147 as though fully set forth herein.

149.    The wrongful acts alleged herein constitute unlawful, unfair, or fraudulent business acts or practices within the meaning of California Business and Professions Code § 17200 et seq.

150.    As a proximate result of the unlawful, unfair, or fraudulent business acts and practices alleged herein, Defendants Truong, Slap Gear T&T and Does 1-20, and each of them,  have deprived Plaintiffs of money or property in an amount to be determined at trial for which Plaintiffs are entitled to restitution.

## PRAYER FOR RELIEF

**THEREFORE**, Plaintiffs Fenix Partners Group, LLC and SperiWorks, LLC, and each of them, pray for judgment against Defendants Elizabeth Truong, Slap Gear Protective, LLC, and T&T Global Logistics Services and Trading Joint Stock Company, and Does 1-20, and each of them, as follows:

**As to the First Cause of Action for Fraud (Intentional Misrepresentation - Fenix)**

1.  For compensatory and special damages; and

2.  For punitive and exemplary damages.

**As to the Second Cause of Action for Fraud (Intentional Misrepresentation – SperiWorks**

1.  For compensatory and special damages; and

2.  For punitive and exemplary damages.

**As to the Third Cause of Action for Conspiracy to Commit Fraud-SperiWorks**

1.  For compensatory and special damages; and

2.  For punitive and exemplary damages.

///

///

///

///

SKT LAW, P.C.
7755 CENTER AVENUE, SUITE 1225
HUNTINGTON BEACH, CALIFORNIA  92647
T: (949) 523-3333; F: (949) 523-3003

SKT LAW, P.C.
7755 CENTER AVENUE, SUITE 1225
HUNTINGTON BEACH, CALIFORNIA 92647
T: (949) 523-3333; F: (949) 523-3003

**As to the Fourth Cause of Action for Conversion and Aiding and Abetting Conversion-SperiWorks**

1. For the value of the funds converted with interest from that time, or, if greater, an amount sufficient to compensate Plaintiff SperiWorks for the losses that were the natural, reasonable and proximate result of the wrongful acts of defendants herein pursuant to California Civil Code section 336, First; and

2. For punitive and exemplary damages.

**As to the Fifth Cause of Action for Civil Theft - California Penal Code §496(a)-SperiWorks**

1. For compensatory and special damages;

2. For the trebling of those damages pursuant to California Penal Code section 496(c)

3. For reasonable attorney's fees pursuant to California Penal Code section 496(c); and

4. For punitive and exemplary damages.

**As to the Sixth Cause of Action for Intentional Interference with Contractual Relations- Fenix**

1. For compensatory and special damages; and

2. For punitive and exemplary damages.

**As to the Seventh Cause of Action for Intentional Interference with Contractual Relations -SperiWorks**

1. For compensatory and special damages; and

2. For punitive and exemplary damages.

**As to the Eighth Cause of Action for Intentional Interference with Prospective Economic Advantage-SperiWorks**

1. For compensatory and special damages; and

2. For punitive and exemplary damages.

**As to the Ninth Cause of Action for Negligent Interference with Prospective Economic Advantage-SperiWorks**

    1.  For compensatory and special damages.

**As to the Tenth Cause of Action for Breach of Written Contract – MSA-Fenix**

    1.  For compensatory damages; and

    2.  For consequential damages.

**As to the Eleventh Cause of Action for Breach of the Implied Covenant of Good faith and Fair Dealing-Fenix**

    1.  For compensatory damages; and

    2.  For consequential damages.

**As to the Twelfth Cause of Action for Unjust Enrichment-SperiWorks**

    1.  For compensatory damages according to proof.

    2.  For disgorgement of any profits derived from the unjust enrichment.

**As to the Thirteenth Cause of Action for Unfair Business Practices- Violation of California Business and Profession Code § 17200 et. seq.-SperiWorks**

    1.  For restitution of the fraudulently obtained sums.

**As to each Cause of Action**

    1.  For interest as permitted by law;

    2.  For costs of suit incurred herein as provided by law; and

    3.  For such other and further relief as the Court may deem proper.

Dated:  May 2, 2022     By: _____

                            SKT LAW, P.C.
                            Eliot F. Krieger
                            Heidi S. Lewis

SKT LAW, P.C.
7755 CENTER AVENUE, SUITE 1225
HUNTINGTON BEACH, CALIFORNIA 92647
T: (949) 523-3333; F: (949) 523-3003

COMPLAINT AND DEMAND FOR JURY TRIAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SKT LAW, P.C.
7755 CENTER AVENUE, SUITE 1225
HUNTINGTON BEACH, CALIFORNIA 92647
T: (949) 523-3333; F: (949) 523-3003

**DEMAND FOR JURY TRIAL**

Plaintiffs, and each of them, respectfully demand a trial by jury of all causes of action so triable.

Dated:  May 2, 2022          By: _____

SKT LAW, P.C.
Eliot F. Krieger
Heidi S. Lewis

COMPLAINT AND DEMAND FOR JURY TRIAL