UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FENIX PARTNERS GROUP, LLC, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>T&T GLOBAL LOGISTICS SERVICES AND TRADING JOINT STOCK COMPANY,<br><br>    Defendant. | Case No. 22-cv-02653-PCP<br><br>**ORDER DENYING MOTION FOR ENTRY OF DEFAULT JUDGMENT**<br><br>Re: Dkt. Nos. 46, 51, 53 |

## BACKGROUND

Plaintiffs Fenix Partners Group, LLC and SperiWorks, LLC allege that defendants Slap Gear Protective, LLC, Elizabeth Truong (Slap Gear's officer/principal), and T&T Global Logistics Services and Trading Joint Stock Company breached contractual obligations to deliver boxes of nitrile gloves during the COVID-19 pandemic. In October 2020, Fenix Partners (based in Texas) contacted Slap Gear (based in California) requesting that Slap Gear deliver 660,000 boxes of nitrile gloves for Fenix Partners' customer SperiWorks (also based in Texas). In response, Slap Gear allegedly represented that it had the capacity to fulfill this order through its manufacturing source T&T Global (based in Vietnam). Accordingly, two contracts were purportedly executed—a master services agreement between Fenix Partners and Slap Gear governed by California law, and a sale and purchase agreement between Fenix Partners and T&T Global governed by Vietnamese law. Dkt. No. 1, at 4. Plaintiffs allege that Slap Gear and T&T Global failed to fulfill their contractual obligations by underdelivering the required number of boxes and missing delivery deadlines. By the end of the contractual period, defendants had purportedly only delivered 161,200 boxes of nitrile gloves. *Id.* at 5. As a result, Fenix Partners was unable to fulfill its own contractual obligations with SperiWorks.

In their complaint, plaintiffs assert fraud (intentional misrepresentation), conspiracy to defraud, conversion, civil theft, intentional interference with contractual relations, intentional interference with prospective economic relations, negligent interference with prospective economic relations, breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and unfair business practices under California's Unfair Competition Law.

On March 21, 2023, the Clerk entered default against defendant T&T Global, which has failed to respond to the complaint to date despite being properly served in May 2022. Dkt. No. 43. Plaintiffs thereafter moved for entry of default judgment against T&T Global on July 26, 2023. Dkt. No. 46.[1] Magistrate Judge van Keulen then requested supplemental briefing on whether the Court may exercise personal jurisdiction over T&T Global notwithstanding that it is a Vietnamese company. Dkt. No. 48. Plaintiffs filed a timely response on November 1, 2023. Dkt. No. 50.

On January 18, 2024, Magistrate Judge van Keulen issued a Report and Recommendation in which she requested reassignment of the case to a district court judge and recommended denying plaintiffs' motion for entry of default judgment. Dkt. No. 51. Judge van Keulen reasoned that the Court did not have personal jurisdiction over T&T Global because the Vietnamese manufacturer neither purposefully directed its activities at California nor purposefully availed itself of the privilege of conducting activities in California, and thus lacked minimum contacts with the forum. Judge van Keulen found that the manufacturer-distributor relationship between Slap Gear and T&T Global was insufficient to establish specific personal jurisdiction over T&T Global, because T&T Global could not reasonably foresee that harm would be suffered in California under the Ninth Circuit's test for purposeful direction. *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1161–62 (9th Cir. 2023). She also noted that T&T Global engaged Slap Gear to distribute products throughout the United States, and that the alleged harm occurred in Texas (since none of the products at issue were delivered to or sold within California). Finally, she stated that exercising personal jurisdiction over T&T Global would not be reasonable because of the burden of requiring a Vietnam-based company to defend itself in California, California's

---

[1] Plaintiffs dismissed the case as to defendants Slap Gear and Truong in April 2023. Dkt. No. 44.

2

1  limited interest in adjudicating the dispute under Vietnamese law, and the plaintiffs' residence in
2  Texas, which was an adequate alternative forum.

3      Pursuant to Judge van Keulen's request, the case was reassigned to District Judge P. Casey
4  Pitts on January 19, 2024. Dkt. No. 52. Plaintiff SperiWorks timely filed an objection to the
5  Report and Recommendation on January 31, 2024, arguing that the Court has specific personal
6  jurisdiction over T&T Global considering its contacts with California. Dkt. No. 53. SperiWorks
7  objects to Judge van Keulen's contention that T&T Global engaged Slap Gear as its distributor for
8  the United States as a whole, instead arguing that Slap Gear was only an authorized distributor in
9  California per a certificate in the complaint. Dkt. No. 1, at 9. SperiWorks also responds that it
10 communicated almost exclusively through California-based Slap Gear about T&T Global's failure
11 to abide by the sale and purchase agreement. SperiWorks further counters that T&T Global's
12 purported conspiracy to defraud occurred with Slap Gear, meaning that T&T Global could have
13 reasonably predicted harm in the state of California.

14     After reviewing the legal issues de novo in light of SperiWorks's objection, the Court
15 agrees with Judge van Keulen that it lacks personal jurisdiction over T&T Global, and therefore
16 denies SperiWorks' motion for entry of default judgment.

## LEGAL STANDARDS

18     When a party objects to a magistrate judge's Report and Recommendation, the Federal
19 Rules require that the assigned district judge "determine de novo any part of the magistrate judge's
20 disposition that has been properly objected to. The district judge may accept, reject, or modify the
21 recommended disposition; receive further evidence; or return the matter to the magistrate judge
22 with instructions." Fed. R. Civ. P. 72(b)(3).

23     Federal Rule 4(k)(1)(A) provides that in the absence of a federal statute governing personal
24 jurisdiction, "the district court applies that law of the state in which the district court sits."
25 *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Since "California's
26 long-arm jurisdictional statute is coextensive with federal due process requirements, the
27 jurisdictional analyses under state law and federal due process are the same." *Id.* at 800–01.
28     In order for a court to exercise personal jurisdiction over a particular defendant, due

United States District Court
Northern District of California

1  process requires that the defendant have "minimum contacts" with the chosen forum such that the
2  exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice."
3  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also Ranza v. Nike, Inc.*, 793 F.3d
4  1059, 1068 (9th Cir. 2015). The "minimum contacts" required by due process depend upon
5  whether a court is exercising general or specific jurisdiction.

6  General jurisdiction extends to all claims that might be asserted against a defendant, and
7  thus requires a substantial degree of contact with the forum. "A court may assert general
8  jurisdiction over foreign … corporations to hear any and all claims against them when their
9  affiliations with the State are so 'continuous and systematic' as to render them essentially at home
10 in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).
11 The "paradigm" bases for general jurisdiction are "the place of incorporation and principal place
12 of business," although operations in another state might also be "so substantial and of such a
13 nature as to render the corporation at home in that State." *Daimler AG v. Bauman*, 571 U.S. 117,
14 137, 139 n.19 (2014).

15 Specific jurisdiction "covers defendants less intimately connected with a State, but only as
16 to a narrower class of claims." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017,
17 1024 (2021). For a court to have specific personal jurisdiction over contract claims, the defendant
18 "must have taken some act by which it purposefully avails itself of the privilege of conducting
19 activities" in the forum state, and the claims "must arise out of or relate to the defendant's contacts
20 with the forum." *Id.* at 1024–25 (cleaned up). The Ninth Circuit applies a slightly different
21 "purposeful direction" test for tort claims. *Davis v. Cranfield Aerospace Solutions, Ltd.*, 71 F.4th
22 1154, 1162 (9th Cir. 2023).

23 In sum, district courts in California must apply a three-part test to determine whether they
24 can exercise specific personal jurisdiction over a defendant: (1) the non-resident defendant must
25 purposefully direct its activities or consummate some transaction with the forum or resident
26 thereof, or perform some act by which it purposefully avails itself of the privilege of conducting
27 activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must
28 be one which arises out of or relates to the defendant's forum-related activities; and (3) the

4

exercise of jurisdiction must comport with fair play and substantial justice. *See, e.g.*, *Core-Vent Corp. v. Nobel Indus., AB*, 11 F.3d 1482, 1485 (9th Cir. 1993).

## ANALYSIS

Because SperiWorks effectively objects to the entirety of Judge van Keulen's Report and Recommendation, this Court will review the motion for entry of default judgment de novo. *See* Fed. R. Civ. P. 72(b)(3). "When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Accordingly, before deciding whether to enter default judgment against T&T Global, the Court must determine whether it has jurisdiction over that defendant.

The Court lacks general personal jurisdiction over T&T Global. Not only are its place of incorporation and principal place of business in Vietnam, but plaintiffs also have not made an adequate showing that T&T Global's contacts with California are "so continuous and systematic as to render [it] essentially at home" in the state. *Goodyear Dunlop*, 564 U.S. at 919. Tellingly, in its supplemental briefing, SperiWorks does not argue that this Court may exercise general personal jurisdiction over T&T Global. Dkt. No. 50.

The Court also lacks specific personal jurisdiction over T&T Global. Because plaintiffs assert claims that sound in both tort and contract, the Court must analyze whether T&T Global has minimum contacts with California under both the purposeful direction and purposeful availment tests. *Schwarzenegger*, 374 F.3d at 802 (noting that purposeful direction and purposeful availment are two distinct concepts).

Purposeful direction requires the defendant to have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Davis*, 71 F.4th at 1162–63. "To establish purposeful availment, [courts] look at a defendant's entire course of dealing with the forum state—not solely the particular contract or tortious conduct giving rise to [a plaintiff's] claim." *Id.* at 1163.

Here, the purposeful direction test cannot support personal jurisdiction because plaintiffs fail to allege that T&T Global injured them in California. Even if California-based Slap Gear was

generally T&T Global's exclusive distributor for nitrile gloves, T&T Global acted solely from Vietnam and purportedly failed to deliver gloves to Fenix Partners and SperiWorks in Texas per the sale and purchase agreement.

SperiWorks counters that the alleged fraudulent activity occurred in California, which is thus where plaintiffs suffered the brunt of harm. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1113 (9th Cir. 2002) (holding that a business "can suffer economic harm both where the bad acts occurred and where the [entity] has its principal place of business."). In support of this argument, SperiWorks cites the master services agreement with Slap Gear, which it alleges made Slap Gear T&T Global's authorized distributor only in California, and contends that plaintiffs primarily communicated to T&T Global through California-based Slap Gear. Therefore, SperiWorks argues, T&T Global could have expected harm from its purported fraud to be suffered in California.

SperiWorks's argument misses the mark. Ultimately, the alleged harm to plaintiffs occurred in Texas because of purportedly tortious conduct by a Vietnamese corporation outside California and arising from the purported breach of a contract between Texas resident Fenix Partners and Vietnam resident T&T Global to which California resident Slap Gear was a non-party. The relevant sale and purchase agreement required T&T Global to deliver boxes of nitrile gloves to Fenix Partners and SperiWorks (both based in Texas), and the mere fact that the liaison between T&T Global and Fenix Partners was located in California does not mean that plaintiffs suffered harm in that state.

SperiWorks also contends that Slap Gear is T&T Global's agent, Dkt. No. 53, at 11, and "[f]or purposes of personal jurisdiction, the actions of the agent are attributable to the principal." *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990). But even if Slap Gear's purported fraud in California were attributed to T&T Global, SperiWorks fails to sufficiently plead that the resulting harm would be suffered in California, given that the goods at issue were never going to be delivered to California and the plaintiffs were never located there.

For these reasons, SperiWorks has failed to show that T&T Global purposefully directed its activities at California for the purposes of its tort claims.

Regarding purposeful availment, the Court must examine "whether the defendant

deliberately reached out beyond [its] home—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there." *Davis*, 71 F.4th at 1163. In doing so, a Court can look to a "contract's negotiations, its terms, its contemplated future consequences, and the parties' actual course of dealing." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)).

In support of their claim that T&T Global purposefully availed itself of the California forum, plaintiffs allege that the master services agreement between Fenix Partners and Slap Gear required Slap Gear to "act as a local point of contact in Vietnam on behalf of Fenix in any communication with T&T regarding the Goods" and "have a representative present at the delivery point of Vietnam during transfer of the goods," Dkt. No. 1, at 35, and that T&T Global and Slap Gear entered into an agreement whereby Slap Gear would serve as T&T Global's sole distributor in California. These pleadings sufficiently allege that T&T Global purposefully availed itself of California in a general sense by asserting that T&T Global purposefully entered into a contractual agreement with a California entity governing the distribution of T&T Global's products in California.

But for a Court to exercise jurisdiction over contract claims asserted against a defendant, due process requires that the claims "arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co.*, 141 S. Ct. at 1024–25. Here, the relationship between the contract claims asserted against T&T Global and its purposeful availment of California is too tenuous. T&T Global was not a party to the master services agreement with Slap Gear; instead, SperiWorks' contract claims arise out of the separate sale and purchase agreement between T&T Global and Fenix Partners. And while SperiWorks' contract claims may bear some abstract relationship to T&T Global's distribution agreement with Slap Gear to the extent that the preexisting relationship between T&T Global and Slap Gear played a role in Slap Gear's subsequent decision to connect Fenix Partners with T&T Global, SperiWorks' contract claims do not originate from transactions governed by that distribution agreement, which SperiWorks itself contends governed distribution only in California. The Court doubts that the remaining extremely tenuous relationship between T&T Global's contractual distributor agreement with Slap Gear and its subsequent and distinct

7

contractual agreements with Fenix Partners is the kind of relationship capable of establishing personal jurisdiction under the "purposeful availment" test.

In any event, exercising personal jurisdiction over T&T Global on the basis of that relationship would offend traditional notions of fair play and substantial justice. Courts in this circuit apply a seven-part test to determine if the "exercise of jurisdiction would not be reasonable." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021). These include: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Id.* at 984.

For many of the reasons articulated by Judge van Keulen in her Report and Recommendation, the Court agrees that exercising personal jurisdiction over T&T Global would be unreasonable. "The purposeful interjection factor in the reasonableness analysis is analogous to the purposeful direction factor." *Id.* Because T&T Global did not purposefully direct itself at California with respect to the claims here, T&T Global also did not purposefully inject itself into the forum's affairs. Additionally, it would be a significant burden to require T&T Global to defend itself from Vietnam. While adjudicating the dispute here might not conflict with the sovereignty of Vietnam given T&T Global's purported business relationship with Slap Gear, California has an extremely limited interest in adjudicating a dispute governed by Vietnamese law wherein none of the products at issue were delivered to the state. And given that none of the relevant parties are located in California and that plaintiffs in particular are based in Texas, a California forum would not provide for the most efficient judicial resolution of the controversy or for the most convenient and effective relief. Finally, Texas appears to provide an alternative forum for the contract claims at issue here.

Because SperiWorks fails to adequately allege that T&T Global purposefully directed its activities at California and because asserting personal jurisdiction over T&T Global on the basis of its extremely tenuous availment of the California forum would be inconsistent with fair play and

8

substantial justice, SperiWorks has not established that T&T Global has the minimum contacts with California needed to support the Court's exercise of personal jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court lacks personal jurisdiction over defendant T&T Global and the motion to enter default judgment against T&T Global is denied. Because T&T Global must be dismissed from the case and there are no remaining defendants in the litigation, the Court orders the Clerk to close the file.

**IT IS SO ORDERED.**

Dated: March 18, 2024

P. Casey Pitts
United States District Judge